May it please the Court. The issue before the Court is whether the SMART SF P-Mart is suggestive or merely descriptive of optical transceivers. In 1988, in In Ray Hutchinson Technology, this Court held that broad general terms adequate to a wide variety of goods are suggestive, not merely descriptive, because they do not immediately and directly convey any concrete or reasonably particular idea of a person agreeing to acquire a characteristic of such goods. This appeal today presents an opportunity for this Court to not only reaffirm the Hutchinson Rule, but also to adopt and implement a framework for applying that rule. If we review Hutchinson and the other decisions that have applied the rule, we see this implicit framework at work. It involves three parts. First, indeed, you have this broad general term applicable to a wide variety of goods. In addition, you have this broad general term whose definition did deal with a very broad general term. Technology was a very broad general term. Why doesn't the word SMART actually convey an immediate idea of ingredients, qualities, or characteristics to quote from Hutchinson? When I say, have you got a SMART camera, don't you know what I'm talking about? Your Honor, my response to that is twofold. First, we see that in the evidence of record, there's actually evidence supporting SMART being applied to a wide variety of goods. We see dictionary definitions applying SMART to missiles and bombs. Yeah, what's a SMART bomb? You know what a SMART bomb is. You know what a SMART camera is, don't you? Well, in this case, the PTO has wavered. Your Honor, if I ask you the question, what's a SMART bomb, you have an answer, don't you? I think when people think of a SMART bomb, they may think of a bomb that's being guided for a missile. It's got some abilities to accomplish something. What about a SMART camera? It focuses itself, it's got certain abilities. We understand those terms, don't we? So you're describing a certain characteristic of that camera or of that bomb. Well, it's important to also point out that the terms descriptive and suggestive are not always mutually exclusive. There's always some description, even in a suggestive term. Otherwise, the suggestive process would not take place. In the instant case, we can look at the PTO's progression as to which definition of SMART to apply to optical transceivers. If we look at the prosecution of the application, there were five office actions. Three dealt with the descriptiveness issue. If you look at those three office actions, the examining attorney contends that SMART as applied to optical transceivers means sophisticated. Then, in her appeal brief, the examining attorney said, well, you know, it also means programmable. SMART and SFP just mean an SFP with additional capabilities. But what are those additional capabilities? What is the feature or function? It needs to specify the difference between a SMART bomb and a SMART camera is probably slightly different capabilities. But we understand the enhancing nature of the word SMART. It is describing an enhanced ability of whatever it is applied to. A SMART SFP is an enhanced SFP. A SMART camera is an enhanced camera. A SMART bomb is an enhanced bomb. We're describing qualities of it. It's exactly the language of Hutchison, except on the side that you perhaps would prefer not to acknowledge. That description is a vague and ambiguous and amorphous description that does not immediately and directly convey a concrete or reasonably particular idea. That's why the PTO went from saying that SMART means sophisticated to saying it means programmable to saying it means automated. They've had trouble settling on an apropos definition of SMART as applied to optical transceivers. The examining attorney in her appeal brief, page 849 of the appendix, admits that SMART does not pinpoint an exact feature or function of optical transceivers. The principle definition relied on by the PTO... Does it have to pinpoint an exact feature in order to describe a characteristic? Courts do say that in order for a SMART to be merely descriptive, the idea being conveyed has to be concrete or reasonably particular. It has to convey an immediate idea of a characteristic. That's correct. By using enhancement of whatever the technology is, a better bomb, a better camera, a better SFP, describing a characteristic there. It's not a sufficiently concrete description or adjective. The term SMART, like technology, can't be applied to any good. In fact, it has been. In addition, I would note that there is not substantial evidence in the record that SMART is merely descriptive of the PTO contents. Did Finistar have any documents which characterized the SFP technology as SMART? Finistar submitted product literature in response to the first office action. The PTO contends that Finistar's use of the term SMART in quotations evidences a descriptive use. However, when you look at how Finistar is using SMART in that evidence, it is using SMART as part of SMART SFP in a trademark sense. In fact, if you look at Finistar's product literature on page 8448, you'll see a product marketing sheet that has four different types of transceivers on there. It has the GBIC, the SFP, the SFF, and the SONIC. But it only uses SMART in front of the GBIC and the SFP, even though all those transceivers share the same features. Therefore, they were trying to make a trademark use of it. Counselor, help me understand one aspect of this thing. We've said that the test is what is the primary significance of the mark as a whole to the purchasing public. Now, let me ask the question before you answer it. First of all, this is not something I would go to Radio Shack and buy one of. It's a rather sophisticated piece of equipment. Who is the purchasing public in your market? Who would you go to or who would you expect to walk in your door? There has been this issue of whether the consumer is the average consumer or the prospective purchaser. Our doctrine says that purchasing public, I don't think it means folks walking across the street. It means who is the purchasing public for this product. How would you describe that? I would describe them as businesses seeking to— Businesses don't purchase, you mean? Companies who are purchasing— Technicians, engineers, who really purchases this thing? Whose mind are we supposed to be in when we think about this? A business doesn't have a mind, we don't have minds. Help me with that. I'm not sure I can speak to exactly who is purchasing the S&Ps. That has been an issue that hasn't been dealt with on the papers beyond the fact of whether it's the average consumer or the prospective relevant purchaser. However, it does— I would agree that most of the time it would not be. It would not be. The reason I'm doing this is I'm trying to put myself in the mind of whoever this purchasing public is, who I assume is a specialist and technically trained in this field. I'm trying to imagine if someone came in to market to me a smart SFP. If someone came in and said, I have in my hand a smart SFP, I suppose if I were an expert in this field I'd say, oh good, who makes it? Wouldn't I? Well, that's the exact issue. A consumer encountering the smart SFP in the marketplace would have to determine whether he's viewing that smart SFP mark as a descriptive phrase or as a brand. If you said to me, I have a smart SFP, what would I think? I would say that if you saw smart SFP as a compressed unitary term and— People don't think in terms of compressed unitary terms. People think in terms of what is it that is being sold to me. Correct. But one of the classical tests for determining whether a mark is suggestive or merely descriptive is the competitor's need test. Do competitors need to use the term smart SFP in order to describe their products? Well, no one's using smart SFP in the optical communication space. Only Finisar plans on using smart SFP in that space. Mr. Karamichi, you sent us to pages A118 and A119, which is a Google search page. Okay. Every single advertisement here for an FSP in this Google search uses the word smart transceiver, smart transceiver, smart transceiver, smart transceiver, smart transceiver. I would start by saying that those Google searches— Every single one of them. I would start by saying those Google search results do not work. European, long world, echelon, business wire, they're all using the same terminology. Those are radio frequency transceivers, not optical transceivers. And, in fact, the board, in its underlying decision on page A15, admits that the Google search results are of minimal, if any, appropriate value. That's because they don't show an actual descriptive use. You were saying to us that this isn't used broadly by the purchasing public, as my colleague was asking, and yet, here, everyone who seems to refer to a transceiver uses the word smart to describe it. That's right, but they don't use smart SFP. They're using smart transceivers. Affording Finistar the smart SFP trademark registration would not prevent other competitors from using the term smart or informing their consumers that they offer optical transceivers. Do competitors actually need to use the phrase smart SFP? The word smart is very obviously a descriptive term here. It is being used to tell us a kind of transceiver. Everyone from Zcom to Finistar is using the term the same way to describe technology. And it's even the same technology. Well, those are actually radio frequency transceivers rather than optical transceivers. And you would agree with me that that distinction is absolutely irrelevant. The question is whether smart is being used as a synonym for enhanced. Well, the fundamental issue has always been determining descriptiveness in connection with the goods for which registration is sought, which would be optical transceivers in this case. Your Honors, I see that I have entered my rebuttal time. If it pleases the Court, I'd like to say that I may have my time for rebuttal. Certainly, Mr. Carabucci. Thank you. Please proceed.  Your Honors, substantial evidence in the record supports the Board's decision that smart SFP is merely descriptive of one type of optical transceivers. That is, a small form-factor pluggable transceiver, in other words, an SFP, is a specific type of optical transceiver sold by Finistar and other companies. Some of these SFP transceivers have so-called automated, programmable, or digital diagnostic technology in them. That is referred to in the technology field generally to mean as smart. And these so-called smart SFP transceivers are a type of product that Finistar says it intends to sell. I think there's no quarrel about the SFP being descriptive, shorthand for these particular units. We don't think so, Your Honor. I think they essentially concede that point. They did concede that point during the prosecution. The Board said it did not need to rely on that concession. It still found that there was substantial evidence beyond the concession. But they continue to argue it in the brief. But it is the mark as a whole that we care about, right? It's the shorthand name of the device, of a particular type of optical transceiver. My understanding was that they conceded that SFP was an acronym, but not necessarily that it was descriptive. Correct. They do concede it's an acronym. During prosecution, they said that we admit that it's an initialism for a small form factor pluggable at issue. Therefore, it's whether smart is descriptive. That's what they said during prosecution. What did you understand that initialism is? I believe it's an acronym. You can have two, three, four descriptive terms that could be put together, and the combination would be not descriptive, right? Correct. Why isn't that the case here? When you put different terms together, I think there's examples on page 29 of Finisar's brief, where they show examples of some descriptive terms, such as super, water, finish. Those words separately could be descriptive, but when applied to paper, it's suggested in terms of a particular finish that the paper has. There are examples of when something could actually, when you combine two descriptive terms, become suggestive. In this particular instance, when you have something like smart SFP that Finisar itself is using descriptively, if you look at pages 8, 447, and 448, they have smart in quotes, SFP in their own product brochures, which is unusually strong evidence to have to show directly how this particular combination of words is being used. But isn't there a difference between using something in quotes and using something in a single word together? Well, I think you have to look at, I think in this particular instance where smart SFP is not a word, it's similar to gas badge that we cite in our brief, where gas badge is not a word, but gas and badge are two common words that they try to register as a mark that is found descriptive, or screen wipe, which is, again, two common words put together. It has no meaning other than the two words separately. There's no indication that smart SFP means anything other than an SFP transceiver that has smart or enhanced capabilities. There's nothing else in the record, and this court has said that if the combination is not incongruous or has a unique commercial impression, then it, you know, using the evidence we have before us, it is descriptive just as it's two parts of descriptive. I have nothing else. I'll waive my time until I see if there are any questions. Thank you. Thank you, Mr. Hanson. Mr. Derby. We have about two minutes remaining. As an initial matter, it is true that putting together two non-descriptive terms can result in a suggested mark. When I was preparing for oral argument, I found three decisions by the TTAB, to be fair, non-precedential, addressing smart belt, smart cart, and smart air. In each of those cases, the TTAB found that the individual component terms were descriptive, but the marks as a whole were suggested. Why should it be any different for smart SFP, which is actually a unitary compressed term? We submit that it shouldn't. Furthermore, in 1988, when this Court decided in Hutchinson technology, it held that broad general terms applicable to a wide variety of goods are suggested. In that case, technology was part of a larger composite mark, Hutchinson technology. What distinct commercial impression is created by the combination of smart and SFP? That combination is not out in the marketplace, and competitors do not have a need to use it. Therefore, the consumer is not used to seeing those two words together. That creates a unique commercial impression upon the consumer. Today, this Court is faced with essentially the same situation as in Hutchinson. Smart is applicable to a wide variety of goods. Smart is also part of a larger composite and compound mark. Accordingly, we would respectfully request that this Court find that smart-like technology is suggestive and that smart SFP as a whole is suggestive and capable of registration and reverse the TTAB's ruling in order that the smart SFP mark be allowed to register. Thank you, Mr. Chairman. The final case today is Green.